UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-61991-CIV-MORENO/DUBÉ

RAYMOND BRUCE STIMPSON,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the Defendant (D.E. #19) and the Motion for Summary Judgment filed by the Plaintiff (D.E. #18) pursuant to a Clerk's Notice of Magistrate Judge Assignment entered by the Clerk of Court, United States District Court for the Southern District of Florida. The issue before the Court is whether the record contains substantial evidence to support the denial of benefits to the Plaintiff, Raymond Bruce Stimpson (hereinafter "Stimpson" or "Plaintiff").

### I. FACTS

Stimpson filed an application for supplemental security income on June 5, 2006 which asserted disability as of April 1, 2005. (R. 108-111).[1] The application was denied initially and on reconsideration. (R. 87-96). Following a hearing on September 5, 2008 (21-64), the ALJ issued a decision denying the request for benefits. (R. 6-20). A request for review filed with the Appeals Council was denied. (R. 1-5).

---

1. All references are to the record of the administrative proceeding filed as part of the Defendant's answer. During the administrative hearing, the Plaintiff amended the disability onset date to June 5, 2006. (R. 31).

The Plaintiff, age 50 at the time of the hearing on September 5, 2008, testified he has lived in an alcohol and drug rehabilitation facility for 3 years and 7 months. (R. 24, 30). The Plaintiff explained he initially entered the facility to deal with his alcohol problems but once there had medical problems which required attention. (R. 24-25). Stimpson stated that at the facility he attends meetings, case management and is tested for compliance. The Plaintiff asserted he last used alcohol on March 2, 2004 and he never used "street drugs." (R. 25). The Plaintiff stated his case manager at the facility is Peggy Dahldren. (R. 26). Stimpson explained that his case manager's job is to ensure he stays clean and follows the rules and regulations of the program, and to meet with him weekly. (R. 28).

The Plaintiff testified he has a driver's license and attended the hearing by bus. (R. 26). Stimpson testified he has worked in roofing for 20-25 years. He added that he stopped working because it became clear to him that he was no longer capable of doing the work. According to the Plaintiff, he did not apply for disability because of his alcoholism. (R. 27). The Plaintiff said he moved to Florida from Puerto Rice in 1967. The Plaintiff further testified he has not met with a vocational counselor. (R. 28). Stimpson stated he obtained a 2-year degree from Broward Community College. (R. 30). He also stated that he is divorced, does not have any children and last worked in June 2005. The Plaintiff described his previous work as a roofer as, "... go in there and do a tear off, torch down, mop. You could replacing plywood." (R. 31).

According to the Plaintiff, he received a cortisone injection in his right shoulder after having an accident and he has had MRI's and CAT scans of his neck, and lower back. The Plaintiff said he is left handed. (R. 32). The Plaintiff explained the problems in his back are related to his thoracic and lumbar areas. Additionally, Stimpson testified that his primary care physician at the clinic orders his MRI's. (R. 33). The Plaintiff described his pain as originating in the neck and passing through

both shoulders, his lower back and neck. (R. 33-34). Stimpson testified that in 1997 he was involved in a car accident which is when his physical problems began. He further testified that initially his medical issues were not apparent but he eventually began having headaches. (R. 34).

Stimpson stated he only received one set of injections in his shoulder from Dr. Simon. (R. 35). The Plaintiff also said that in addition to his other doctors, he sees a pulmonary physician because he has breathing problems. Stimpson explained that for his breathing problems he takes various medications and uses a nebulizer. The Plaintiff asserted the main reason he cannot work is because of pain and fatigue. He added that the fatigue is caused by a combination of weather and pain. (R. 36). The Plaintiff testified he previously smoked a pack of cigarettes a day but in the previous year and a half he had cut down to 10 cigarettes a day. (R. 36-37). The Plaintiff stated he gets shortness of breath which is caused by the weather, humidity, climbing stairs, walking or waiting for the bus. (R. 37-38). He explained that waiting for the bus causes shortness of breath because of the sun.

Stimpson testified he can walk 1-2 blocks before having to sit down; stand for about half an hour before his lower back and neck hurt; sit for 45 minutes; and cannot lift more than 10 pounds because he would be in pain and become "double fatigued." (R. 38-39). In addition to his other limitations, the Plaintiff asserted he has problems gripping and reaching. (R. 39). The Plaintiff testified that it used to take him between 15-20 minutes to get ready to leave the house but now he requires an hour and a half. He also testified that in the morning, the first thing he needs is his medications or a hot shower. The Plaintiff stated, he takes medication which helps him sleep. (R. 40). Stimpson asserted he has inflammation in his neck which travels back into his back area. Stimpson also said that as a result of taking his medications, he experiences nervousness, trembling, dry mouth, blurry vision and headaches. The Plaintiff stated he has difficulty balancing which is

especially bad in the mornings. (R. 41).

The Plaintiff explained his problems gripping involved dropping a pen or bottles of shampoo. He also explained he believes his problem with reaching is reaching overhead. (R. 42). When asked to describe his pain, the Plaintiff stated as follows:

> It's, that lower back would be the first one. It would be a dull, numbing pain where it locks everything in. That's the only way I can describe it and it becomes stiff. The neck area is very sharp where it's constant, it's a nagging on the neck. I mean if you could imagine on a daily basis, you get no relief.

(R. 43). According to Stimpson, he has difficulty bending, kneeling and stooping. Stimpson stated that medications mask the pain and work at a certain level. He added that the medications work for 3 or 4 hours before wearing off. (R. 44). The Plaintiff testified his daily headaches could last a day or two if he does not take medication, and the medication works for 6 to 8 hours before the headaches return. The Plaintiff further testified his problems have worsened since June 2006. (R. 45).

The Plaintiff stated he went to the emergency room 3 weeks prior to the hearing because he ran out of medication. The Plaintiff also stated his degree was in commercial arts but he never worked in the field. (R. 46). Stimpson testified he tried physical therapy including stretching at home; although he admitted that sometimes he forgets to stretch. (R. 46-47). He added that he walks to the store or library but not as part of a regular exercise routine. (R. 47). The Plaintiff said rather than looking for lighter work, he continued working in construction because it was part of his pattern to go to work, then he headed to a sports bar for "myself medication." (R. 48). The Plaintiff said he worked at Labor Ready Warehouse. (R. 49). He described the job as follows:

> So, you know, there's no guarantees. You can go there at 5:30 in the morning and you're trying to do what you've got to do to make a days pay and most of the guys get about 35, $50.00 a day.

(R. 50).

The Plaintiff testified he was involved in a second accident in 2007 where he injured his right shoulder and had litigation pending. (R. 51). Stimpson stated he goes to the public library to use the computer; and to check out books, CD's or DVD's. The Plaintiff was asked why he does not go anywhere aside from the library and he responded as follows:

> Well, most of the time I'm either recovering from not feeling well or I'm being slammed again with pain. So my life is limited as far as any other activities and I try to just manage that on a daily basis, try to take care of myself with eating properly and getting the rest I need and like I said, I try to read so I can, you know, the times I can read because the headaches down there, I can't read.

(R. 52).

In addition to the Plaintiff's testimony, Howard Feldman, a vocational expert, testified at the Plaintiff's hearing. The VE described the Plaintiff's past relevant work as a roofer, DOT # 866.381-010, heavy, and semi-skilled. (R. 53). The VE was posed a hypothetical question wherein the individual has a similar work background, age and education as the Plaintiff; was limited to medium work that should be performed in a clean environment. The VE testified that such an individual could perform warehouse work, DOT #922.687-058, medium, and unskilled with an SVP of 2; and as a commercial cleaner, DOT # 919.687-014, medium, and unskilled with an SVP of 2.

The VE was then asked a second hypothetical question with the same parameters but with the added restriction that the individual could not use the non-dominant hand for overhead lifting, pulling and pushing. The VE opined that the stated work would not be impacted as it did not require overhead pushing and pulling. (R. 54). A third hypothetical was then posed wherein the person would be further limited as a result of chronic pain and would miss work up to 4 times a month. The vocational expert stated that unauthorized absences would prevent competitive employment. (R. 55).

The Plaintiff's attorney then posed a hypothetical question to the VE which included limitations of being unable to sit for more than 4 hours in an 8-hour workday; the ability to stand for up to 1 hour at a time for only 2 total hours in an 8-hour workday; would be absent from work for 1 day a month; would have problems in the ability to concentrate; and would have visual disturbances and blurriness. (R. 55-56). The VE stated as follows:

> The person could participate in work and if they could not be at the work station for sufficient amounts of time to get out the industrial required norms, they would not be able to be competitively employed.

(R. 56). The VE added that missing 1 day a month of work would not necessarily preclude employment. (R. 56). The VE testified that extreme temperature changes would not affect the occupations mentioned, and if a person could only be at the work station for 2 hours a day they would not be able to perform competitive work. (R. 58).

With regard to occasional blurry vision that would occasionally affect near and far acuity, the VE opined that the jobs mentioned do not require a lot of visual perception but they do require an ability to see. (R. 59-60). The VE testified that if the use of the upper-extremities were limited two-thirds of the time, the jobs being discussed could not be performed. (R. 61-62). He explained that any laboring job would require the constant use of the upper extremities. (R. 62). He further testified that if an individual could only grasp and handle occasionally, they would not be able to perform manual labor jobs but could do other work like gate keeping or a sales person. (R. 63).

In addition to the testimony presented at the hearing, medical records were submitted to the ALJ. However, a review of the medical records and the specific issues raised by the Plaintiff in his Motion for Summary Judgment shows that the resolution of the issues do not require this Court to specifically set out all the medical evidence in detail. Accordingly, this Court will discuss the legal

issues involved and will incorporate the facts as appropriate within the arguments presented below.

After a hearing and review of the record, the ALJ issued an opinion finding that the Plaintiff had the following severe impairments: cervical spine disorder, asthma, headaches, cervical spine pain, bilateral shoulder pain and lumbar spine pain.. The ALJ also found the Plaintiff's history of alcohol dependence to be a non-severe impairment. (R. 11). The ALJ further found that the Plaintiff did not have an impairment or combination of impairments that meets or equals a listing. (R. 12). The ALJ determined that the Plaintiff retained the residual functional capacity to perform medium work in a clean environment not involving overhead lifting/pulling/pushing with the non-dominant hand. (R. 12). The ALJ concluded that the Plaintiff could not perform any of his past relevant work but based on the Plaintiff's age, education, work experience and RFC there were jobs that exist in significant numbers in the national economy which the Plaintiff could perform, and thus, was not disabled within the meaning of the Social Security Act. (R. 19-20).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's

decision. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See, Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145-1146 (11th Cir. 1991); See also, Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

Social Security regulations establish a five-step sequential analysis to arrive at a final determination of disability. See, 20 C.F.R. section 404.1520; 20 C.F.R. section 416.920 (a)-(f).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. section 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. section 404.1520(c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. section 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. See, Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. section 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R. section 404.1520(e)-(f).

The claimant bears the initial burden of proving that he is unable to perform previous work. See, Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). The inability to perform previous work relates to the type of work performed, not to merely a specific prior job. See, Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986).

The Plaintiff raised four points of contention in his motion: 1) the ALJ's RFC assessment is not supported by substantial evidence; 2) the ALJ improperly rejected the opinions of two of the Plaintiff's treating physicians; 3) the ALJ improperly applied the pain standard; and 4) the vocational expert testimony does not support the ALJ's finding that the Plaintiff can perform other work in the national economy. The Court will first address the Plaintiff's second and third points of contention prior to addressing the ALJ's RFC assessment.

The opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding the treating physician's diagnosis. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause has been seen when the treating doctor's opinion was not bolstered by the evidence; the evidence supported a contrary finding or the opinion was conclusory or inconsistent with the physician's own medical records. If the ALJ disregards the opinion of a treating physician, the ALJ must clearly articulate his reasons. See Phillips v. Barnhart, 357 F.3d 1232, 1240-1241 (11th Cir. 2004).

Additionally, this Court previously held that, a treating physician's opinion will be given controlling weight if it is well supported by medically acceptable clinical and diagnostic techniques and is consistent with other evidence in the record. Holley v. Charter, 931 F. Supp. 840, 849 (S.D. Fla. 1996). Further, a treating doctor's opinion is entitled to more weight than a consulting doctor's opinion. Wilson v. Heckler, 734 F. 2d 513, 519 (11th Cir. 1984). More specifically, the Plaintiff contends that the ALJ erred by not giving any weight to the opinions of Drs. Simon and Kumar.

On February 15, 2008, Dr. Simon completed a Cervical Spine Residual Functional Capacity Questionnaire. (R. 285-289). Dr. Simon stated that he saw the Plaintiff every two weeks for about 10 minutes for his right shoulder and cervical spine and indicated a fair prognosis. Dr. Simon stated the Plaintiff's symptoms include tenderness, muscle spasm, muscle weakness and impaired sleep. (R. 285). Dr. Simon opined that the Plaintiff has severe headaches associated with his impairments and also suffers from constant and severe pain. According to Dr. Simon, the Plaintiff's symptoms associated with his headaches, include vertigo, photosensitivity, inability to concentrate, impaired sleep, visual disturbances, mood changes and mental confusion. He also stated that the Plaintiff has daily headaches which last 3-5 hours; and laying down, cold packs and Tylenol 3 make the

headaches better.

Additionally, the doctor noted the Plaintiff has problems reaching, dropping things and suffers from memory loss. (R. 286). The doctor stated that the Plaintiff's pain and other symptoms would occasionally interfere with the Plaintiff's attention and concentration during a typical workday. (R. 287). Dr. Simon said the Plaintiff could sit and stand for 1 hour at a time; stand/walk for about 2 total hours in an 8-hour workday; sit for about 4 total hours in an 8-hour workday; and would need to walk for 5 minutes, every 60 minutes during an 8-hour workday. (R. 287-288).

Dr. Simon noted the Plaintiff could frequently lift/carry up to 20 pounds, but rarely lift/carry 50 pounds. (R. 288). Additionally, Dr. Simon stated the Plaintiff could occasionally look down, turn his head right or left, look up, hold his head in static position, and climb ladders and stairs; and could frequently twist, stoop and crouch/squat. (R. 288-289). Dr. Simon added the Plaintiff would have both good and bad days and would likely be absent from work 1 day a month because of his impairments. (R. 289). With regard to the opinion of Dr. Simon, the ALJ stated as follows:

> The undersigned gives little weight to the opinions of Dr. Simon (Exhibit 10F). His opinions are not supported by the medical evidence of record. In fact, the limitations in range of motion of the cervical spine were not documented by any other doctor.

(R. 18). With regard to the evaluation of medical opinions, the Regulations state as follows:

> (d) How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

(2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(I) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

(I) Length of the treatment relationship and the frequency of examination. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(ii) Nature and extent of the treatment relationship. Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(3) Supportability. The more a medical source presents relevant

> evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.
>
> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
>
> (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
>
> (6) Other factors. When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

20 C.F.R. § 404.1527.

In the instant matter, the Court agrees with the Plaintiff that the ALJ improperly rejected the opinion of the Plaintiff's treating physician, Dr. Simon. This Court finds that the ALJ's general rejection of Dr. Simon's opinion does not comply with the requirements of the Eleventh Circuit standards which has consistently held that an ALJ must clearly articulate reasons for rejecting the treating physician's opinion or those set forth in the regulations. The ALJ limited the discussion of Dr. Simon's RFC simply to the range of motion limitations and did not cite any reasons for rejecting

the remainder of the opinion. As such, it is the opinion of this Court that remand is required so the opinion of Dr. Simon can be properly evaluated.

With regard to the opinion of Dr. Kumar, on April 21, 2008, Dr. Kumar completed a Pulmonary Residual Functional Capacity Questionnaire. (R. 293-296). Dr. Kumar indicated the Plaintiff was seen every 3 months for COPD and that his symptoms were shortness of breath. (R. 293). The doctor opined that the Plaintiff could tolerate moderate work stress; and the prognosis was that the Plaintiff's symptoms could possibly become worse. (R. 294). Dr. Kumar indicated the Plaintiff had no pulmonary restrictions with regards to sitting; could stand 15-20 minutes at one time before needing to sit or walk; stand/walk less than 2 total hours in an 8-hour workday; sit for about 4 total hours in an 8-hour workday; and rarely lift/carry 10 pounds.

Dr. Kumar stated the Plaintiff could frequently twist; occasionally stoop and crouch/squat; and rarely climb ladders or stairs. (R. 295). Additionally, Dr. Kumar also stated the Plaintiff should avoid concentrated exposure to high humidity, wetness and perfumes; moderate exposure to extreme cold, extreme heat and dust; and all exposure to cigarette smoke, fumes, odors, gases and chemicals. Dr. Kumar added the Plaintiff would have good and bad days and was likely to miss about 4 days per month of work as a result of his impairments. (R. 296).

With regard to Dr. Kumar's assessment, the ALJ stated as follows:

> The undersigned gives little weight to the opinions of Dr. Kumar (Exhibit 12F). His opinions appear to be based mainly on self reports of the claimant and are not supported by the medical evidence of record.

(R. 18). The Plaintiff was seen by Dr. Kumar on August 17, 2007, March 21, 2008, April 21, 2008 and June 23, 2008. On each of those visits, Dr. Kumar diagnosed the Plaintiff with severe COPD.

(R. 355, 383, 385, 486). Additionally, an x-ray taken on January 5, 2007 of the Plaintiff's chest revealed "mild hyperinflation most probably related to history of obstructive airways disease." (R. 256). There is no evidence in the record which would suggest that Dr. Kumar's opinion was based on self reports. As such, it is the opinion of this Court that the ALJ improperly rejected the opinion of Dr. Kumar and remand is required so said opinion can be properly assessed.

The Plaintiff also argues that the ALJ improperly applied the pain standard. It is well established that pain alone can be disabling. Walker v. Bowen, 826 F. 2d 996, 1003 (11th Cir. 1987). In determining whether the Plaintiff suffers from disabling pain; the following test must be satisfied:

> [T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

Lamb v. Bowen, 847 F. 2d 698, 702 (11th Cir. 1988).

In the instant case, the first prong of the Lamb test was satisfied as the ALJ found the existence of an underlying medical condition. The ALJ found that the Plaintiff suffered from cervical spine disorder, asthma, headaches, cervical spine pain, bilateral shoulder pain and lumbar spine pain, all severe impairments but not severe enough to meet or medically equal, either singly or in combination to one of the listed impairments listed in Appendix 1, Subpart P, Regulation No. 4. (R. 11).

The analysis then shifts to the second prong of the test. Disabling pain could be shown in one of two methods. One, by objective medical evidence confirming the severity of the alleged pain or by showing that the underlying objectively determined medical condition is of a severity which can

reasonably be expected to give rise to the alleged pain. <u>Lamb</u>, at 702.

Once the ALJ determined that the objective medical evidence did not confirm the severity of the Plaintiff's alleged pain he must then look towards the Plaintiff's subjective complaints and determine whether they can reasonable be expected to produce the alleged pain. "Whether or not the condition could be expected to give rise to the complained of pain is a question of fact subject to the substantial evidence standard of review." <u>Lamb</u>, at 702, <u>citing to,</u> <u>Hand v. Heckler</u>, 761 F. 2d 1545, 1549 (11th Cir. 1985); <u>Boyd v. Heckler</u>, 704 F. 2d 1207, 1209 (11th Cir. 1983).

The credibility of the Plaintiff's testimony must also be considered in determining if the underlying medical condition is of a severity which can reasonably be expected to produce the alleged pain. <u>Lamb</u>, at 702. If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. <u>Wilson v. Barnhart</u>, 284 F. 3d 1219, 1225 (11th Cir. 2002). Failure to articulate the reasons for discrediting subjective testimony requires as a matter of law, that the testimony be accepted as true. <u>Id.</u>

With regard to the Plaintiff's testimony, the ALJ stated as follows:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.

(R. 14). The ALJ further stated as follows:

> On August 13, 2008 the claimant was seen in an emergency room with complaints of neck and back pain. The claimant was given medication and released. (Exhibit 15F pp 2-18).
>
> The undersigned recognizes that the claimant testified that he had

> multiple MRIs and CT scans of his neck, back and lower back. However, the claimant failed to point out that tests were all essentially benign except for showing osteoarthritis of the cervical spine (Exhibit 15F pp. 55, 104-150 and 197).
>
> The claimant also testified that he had been evaluated by his neurologist, Dr. Lopez. It was not mentioned that Dr. Prego-Lopez had found the claimant to have no underlying neurological abnormality (Exhibit 15F pp. 57-59 and 66).

(R. 18). While, an ALJ may not reject a plaintiff's subjective complaints of pain simply by the lack of objective evidence, the allegations of a severe impairment should be supported by medically acceptable clinical and laboratory diagnostic techniques and allegations of pain should be weighed with the overall record which includes clinical data, testimony, demeanor at the hearing, frequency of treatment, response to treatment, use of medications, daily activities, motivations, credibility and residual functional capacity. Watson v. Heckler, 738 F. 2d 1169, 1172-1173 (11th Cir. 1984).

Further, the claimant's testimony of pain or other subjective symptoms standing alone, are not conclusive evidence of disability. See, Macia v. Bowen, 829 F. 2d 1009, 1011 (11th Cir. 1987). If an ALJ rejects a claimant's testimony on credibility grounds, the ALJ must explicitly state as much and give adequate reasons for that determination. Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995). There is no requirement that the ALJ refer to every piece of evidence, but the credibility determination must not be "a broad rejection." Dyer, 395 F.3d at 1211. Failure to set out the reasons for the discrediting of subjective pain testimony mandates, as a matter of law, that the testimony be accepted as true. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002).

In the instant matter, the ALJ recognized that the Plaintiff's impairments could have caused the alleged limitations but found the Plaintiff not credible specifically with regard to the intensity of his pain. The ALJ thoroughly reviewed the Plaintiff's testimony and treatment history, and cited

specific reasons for finding the Plaintiff not credible. As the ALJ complied with the regulatory requirements, it is the opinion of this Court that the ALJ's decision regarding the Plaintiff's credibility is supported by substantial evidence. A clearly articulated credibility finding with substantial supporting evidence in the record will not be disrupted by a reviewing court. Foote v. Chater, 67 F. 3d 1553, 1562 (11th Cir. 1995).

With regard to the ALJ's RFC assessment, the residual functional capacity is an assessment which is based upon all of the relevant evidence of a claimant's remaining ability to do work despite his impairments. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997), citing, 20 C.F.R. § 404.1545(a). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess ... her work-related abilities on a function by function basis.... Only after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy." Freeman v. Barnhart, 220 Fed. Appx. 957, 960 (11th Cir. 2007).

The Plaintiff contends that the ALJ improperly failed to explain or properly evaluate the effect that the Plaintiff's multiple impairments would have on the Plaintiff's ability to work.

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96-8p (4).

As the Court found that remand is required so the opinions of the Plaintiff's treating physicians can be properly evaluated, the Court also finds that, if needed, a new RFC must be formulated so it can take into account all of the Plaintiff's functional limitations or restrictions.

As a result of the Court's findings, the Plaintiff's remaining argument regarding the vocational expert's testimony is hereby rendered moot.

### III. CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court finds that the decision of the ALJ was not supported by substantial evidence and that the correct legal standards were not applied. Therefore, it is the recommendation of this Court that the decision of the Commissioner be **REVERSED AND REMANDED**. Accordingly, the Motion for Summary Judgment filed by the Defendant (D.E. #18) should be **DENIED** and the Motion for Summary Judgment filed by the Plaintiff (D.E. #19) should be **GRANTED in part.**

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from service of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Chief Judge Federico A. Moreno, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. Loconte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); R.T.C. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND ORDERED** this 15 day of October, 2010.



ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE